FILED
SUPERIOR COURT
OF GUAM

2024 JAN -3 PM 4: 53

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM
## HAGÅTÑA, GUAM

|  |  |  |
|---|---|---|
| **PEOPLE OF GUAM** | ) | Criminal Case No. CF0253-23 |
|  | ) | Police Report No: 23-09813/23-09815 |
|  | ) |  |
| Plaintiff, | ) | **DECISION AND ORDER** |
| vs. | ) | **DEFENDANT'S MOTION TO** |
|  | ) | **SUPPRESS PHYSICAL EVIDENCE** |
|  | ) |  |
| **ALFONSO, BILLY** | ) |  |
| DOB: 03/13/1984 | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## I. INTRODUCTION

This matter came before the Honorable Alberto E. Tolentino on July 10-12, 2023, for an evidentiary hearing on Defendant's Motion to Suppress Physical Evidence and Statements ("Motion to Suppress"). Defendant was represented by David J. Highsmith of the Public Defender Service Corporation. Assistant Attorney General J. Basil O'Mallan appeared for the People of Guam. The Court took the matter under advisement and having duly considered the parties' briefs, oral testimony, and the applicable law, the Court now issues this Decision and Order **DENYING** the Defendant's Motion to Suppress Physical Evidence.

## II. BACKGROUND

Defendant is charged with the Possession of a Schedule II Controlled Substance with Intent to Deliver (as a First Degree Felony) and Possession of a Schedule II Controlled Substance (as a Third Degree Felony). Indictment April 24, 2023. On May 15, 2023, the instant Motion to Suppress was filed and an order sought from the Court suppressing all physical evidence—finding that Guam Police Department ("GPD") illegally seized the evidence. Def. Alfonso's Motion to Suppress Physical Evidence and Statements, May 15, 2023 (hereinafter "Motion".). The People filed an Opposition to the Motion to Suppress. People's Opp. to Def.'s Mot. to Suppress Physical Evidence and Statement, June 30, 2023 (hereinafter "People's Opp."). The Court held an evidentiary hearing on the motion on July 10, 2023. Minute Entry, July 10, 2023.

In his motion, Defendant argues that the Officers never had probable cause to believe he had committed any crime because the illegal nature of the improvised green pipe was not immediately apparent based on the officer's view of the object. Motion at 2–6. The pipe was not on Defendant's person and could have had a use other than for illegal drugs. *Id.* Defendant continues that the contraband discovered pursuant to an illegal seizure and subsequent search of his person were obtained in violation of his Fourth Amendment rights. *Id.*

The People respond that the evidence seized in this matter should not be suppressed because Officer Ibanez's assertion that he spotted part of the pipe sticking out from the console constituted probable cause for a search based on the plain view exception, that the officers had authority to detain Mr. Alfonso by ordering him to exit the vehicle, and that there was reasonable cause to search Mr. Alfonso's person. People's Opp. at 2-4. The People observe that the Supreme Court of Guam recognizes exceptions to the Fourth Amendment's warrant

requirement, including voluntary consent. *People v. Chargualaf*, 2001 Guam 1 ¶ 14. The People further observe that plain view is another exception to the Fourth Amendment's warrant requirement, citing the factor test for adopted by the Guam Supreme Court in *People of Guam v. Camacho*, where 1) the officer must arrive at the place from which the evidence could be plainly viewed without violating the Fourth Amendment, 2) the evidence must be in "plain view" and its "incriminating character must be immediately apparent, and 3) the officer must also have a lawful right of access to the object itself. *People of Guam v. Camacho*, 2004 Guam 6 ¶ 20.

Based on the factors outlined in *Camacho,* the People assert that the officer had probable cause to search Defendant based on the plain view exception to a warrantless search. People's Opp. at 2-4. The Officer was lawfully in a position from where they could see the pipe, having arrived at the scene to provide roadside assistance. *Id.* at 2. Second, the criminal nature of the pipe was immediately apparent. *Id.* at 3. The improvised green pipe is commonly used for the consumption of methamphetamine, and the Defendant did not deny that the pipe is a typical pipe used to smoke methamphetamine, only that it could have had a use other than for illegal drugs. *Id.* The pipe was clearly visible from outside of the vehicle, and the officer had probable cause to believe that a crime was being committed or had been committed. *Id.* The Defendant was requested to step out of the vehicle where he was speaking with Officer Lorenzo after the paraphernalia was observed in the middle console. *Id.* Third, the police had lawful access to the items seized when Officer Lorenzo went to initiate a weapons frisk of Mr. Alfonso's person, who then voluntarily handed the officer a black container which held numerous baggies containing illegal drugs. *Id.*

## III. FINDINGS OF FACT

On July 10, 2023, the Court conducted an evidentiary hearing on the motion. Minute Entry, July 10, 2023. GPD Officers John Ibanez and Nate Lorenzo were called by the People. Digital Recording at 12:00:14–12:39:25. Defendant did not call any witnesses. *Id.* From the testimony received from these witness the Court finds:

On April 12, 2023, GPD Officer Ibanez responded to a call regarding a stalled vehicle occurring near 298 Biradan Langet in Dededo, Guam. *Id.* Officer Ibanez testified that he observed two vehicles, a Toyota facing northbound on the northbound travel portion, while the Nissan was facing south along the northbound travel portion. *Id.* He observed that, while one vehicle had stalled out and the driver ("Billy") sought assistance (a "jump") from the other driver ("Raymond"), the latter's vehicle had also died out. *Id.* The Officers were attempting to help both drivers start their vehicles, but both vehicles were still inoperable. *Id.* While speaking to Billy next to the Nissan, Officer Ibanez observed in plain sight a green improvised glass pipe sticking out from the center console of Billy's vehicle. *Id.* Billy was requested to step out of his vehicle where he was speaking with Officer Lorenzo. *Id.* A few seconds later, Officer Lorenzo informed him that he discovered numerous illegal narcotics (Schedule II) and clear resealable baggies on Billy's person. *Id.*

## IV. DISCUSSION

The Fourth Amendment protects against unreasonable searches and seizures and is made applicable to Guam *via* section 1421b(c) of the Organic Act of Guam. *See People v. Johnson*, 1997 Guam 9, ¶ 4. "The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular government invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332 (1977)

(quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968)). Every search or seizure must be reasonable under the circumstances to pass muster under the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 1772 (1996).

**A.  The initial stop and first search of Defendant was part of a routine traffic stop.**

The Court's analysis begins with a determination of the Defendant's initial interaction with GPD. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such question." *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324 (1983) (citation omitted). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S.1, 19 n.16, 88 S.Ct. 1868, 1878 (1968). "In order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. That rule applies to encounters that take place on a city street or in an airport lobby, and it applies equally to encounters on a bus." *Florida v. Bostick*, 501 U.S. 429, 439-440, 111 S. Ct. 2382, 2389, 115 L.Ed.2d 389 (1991).

A traffic stop is a seizure within the meaning of the Fourth Amendment "even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*,

440 U.S. 648, 653 (1979), 468 U.S. 796, 804 (1984). To "determine the reasonableness of an investigative detention a dual inquiry is made. Was the officer's action justified at its inception, and whether continued detention was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. at 20. Absent "reasonable suspicion," police extension of a routine traffic stop to conduct a "dog sniff" violates the Fourth Amendment. *Rodriguez v. United States*, 575 U.S. 1 (2015). Reasonable suspicion may not be derived from inchoate suspicion and unparticularized hunches. *United States v. Sokolaw*, 490 U.S. 1, 7 (1989). During a routine traffic stop the Fourth Amendment permits a law enforcement officer to request a driver's license, insurance and vehicle registration, run a computer check for warrants or stolen vehicles, and issue a citation. *Prouse*, 440 U.S. at 658-660 (1979).

The facts elucidated at the evidentiary hearing clearly indicate that the Officers' initial interests in Defendant and the vehicle were relative to lending aid in reviving two stalled automobiles. The Officers found Defendant in the location described in the report made to GPD of a stalled vehicle. Digital Recording at 12:00:14–12:39:25. Officer Ibanez testified that at the time of the initial encounter, the Officers discovered that Defendant's vehicle was impeding the flow of traffic. As such, the encounter became a routine traffic stop wherein the Defendant was not free to leave. *Id.*

**B. The warrantless search of Defendant's vehicle was constitutional based on the Plain View exception.**

Title 8 G.C.A. § 20.15(a)(3) provides that a police officer may conduct a search without a warrant whenever the officer has reasonable cause to believe that the person to be arrested has committed a felony or misdemeanor whether or not a felony or misdemeanor has in fact been

committed. Normally, a search or seizure made without a warrant is presumed to be unreasonable. *See Pennsylvania v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973)). In the absence of a warrant, the police may lawfully conduct a search or seizure only if an exception to the warrant requirement applies. *See Id.*; *see generally United States v. Woodrum*, 202 F.3d 1, ¶ 6 (1st Cir. 2000) (recognizing that reasonable suspicion of criminal activity and voluntary consent are two situations which justify the seizure of the person in an automobile absent a warrant). When probable cause exists to search an automobile, officers are permitted to conduct a warrantless search of "all parts of the vehicle in which contraband or evidence should be concealed, including closed compartments and trunks." *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991).

One exception to the prohibition on warrantless search and seizure is the "plain view" or "plain sight" exception. For the plain view exception to apply, the police must 1) be lawfully in a position from which they view an object, 2) its incriminating character must be immediately apparent, and 3) the officer must have a lawful right of access to the object. *People of Guam v. Camacho*, 2004 Guam 6 § 20. The incriminating nature of an item is immediately apparent "where the officer ha[s] 'probable cause to associate the property with criminal activity.' *People v. Camacho*, at 25 (citing *United States v. Hudson*, 100 F.3d 1409, 1420 (9th Cir. 1996) and quoting *Brown v. Texas*, 103 S.Ct, 1535, 1543 (1983)). In *Camacho*, the Court held that the incriminating nature of the contraband was immediately apparent when an officer found nineteen heat-sealed plastic straws containing suspected methamphetamine inside an unmarked yellow cylindrical container during the execution of a search warrant, despite the warrant clearly stating that the only items to be seized were firearms. Similarly, the incriminating

nature of a butane torch and a glass pipe with white residue is immediately apparent for plain view purposes. *United States v. Nohara*, 3 F.3d 1239, 1243 (9th Cir. 1993).

Here, Officer Ibanez's search of Defendant's vehicle occurred without a warrant. Digital Recording at 12:00:14–12:39:25. While a warrantless search is generally unreasonable, Officer Ibanez testified that the improvised green pipe was plainly visible from outside of the vehicle. *Id.* While the consensual encounter had evolved from rendering aid to a routine traffic stop, in either event Officer Ibanez was lawfully in a position to view the object. *Id.* Next, the incriminating nature of the improvised green pipe was immediately apparent similar to the fact pattern in *Camacho* and *Nohara*; there are relatively few non-narcotic uses for such a pipe that a reasonable person might accept, nor does there seem to be existing case law where the presence or appearance of drug residue is a requirement for establishing probable cause. Since Officer Ibanez had observed the green improvised pipe in Defendant's vehicle, he had probable cause to believe that criminal activity was taking place and therefore had a lawful right to conduct a warrantless search of the vehicle. *Id.*

Consequently, the Court finds that the search of Defendant's vehicle was constitutionally valid based on the plain view exception to a warrantless search.

**C. GPD Officers only searched Defendant's person based on probable cause and did not violate Guam's "Stop and Frisk" Statute.**

Title 8 G.C.A. § 30.10 provides that: "Whenever a peace officer encounters any person under circumstances which reasonably indicate that such person has committed, is committing or is about to commit a criminal offense, the peace officer may detain such person." The scope of the detainment is limited to "the purpose of ascertaining the identity of the person detained and the circumstances surrounding his presence abroad which leads the officer to believe that he

had committed, was committing, or was about to commit a criminal offense, but such person should not be compelled to answer any inquiry of the peace officer." *People v. Cundiff,* 2006 Guam 12 ¶ 39. Pursuant to 8 G.C.A. § 30.30, a detainment under § 30.10 shall last no longer than reasonably necessary to effect the purposes of that section, and in no event longer than fifteen (15) minutes, and if probable cause for an arrest of the person shall appear, the person shall be arrested. 8 G.C.A. § 30.40. Further, whenever a peace officer authorized to detain any person under the provision of § 30.10 reasonably believes that a person whom he has detained, or is about to detain, is armed with a dangerous weapon and therefore offers a threat to the safety of the officer or another, the peace officer may search such person to the extent necessary to disclose, and for the purpose of disclosing, the presence of such a weapon. 8 G.C.A. § 30.50.

Here, Defendant claims the warrantless search of his person violated the Fourth Amendment because Defendant was unlawfully seized when the police exerted a show of authority by asking Defendant to exit his truck. Defendant argues that, since there was no probable cause, the police had no constitutional basis to conduct a search of Defendant's person. Warrantless searches are "*per se* unreasonable under the Fourth Amendment," though certain exceptions exist. *Arizona v. Gant,* 556 U.S. 332, 338, 129 S. Ct. 1710, 1716, 173 L. Ed. 2d 485 (2009) (citing *Katz v. United States,* 389 U.S. 347, 357, 88 S. Ct. 507, 19 L.Ed.2d 576 (1967)). "Among the exceptions to the warrant requirement is a search incident to a lawful arrest." *Id.* (citing *Weeks v. United States,* 232 U.S. 383, 392, 34 S. Ct., 58 L. Ed. 652 (1914). Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed. 2d 911 (1996).

Since the Court has concluded that the GPD officers lawfully searched Defendant's vehicle based on probable cause under the plain view exception, the subsequent search of Defendant's person was constitutionally valid. The methamphetamine was given to the officer by the Defendant. Digital Recording at 12:00:14–12:39:25. The officer informed the Defendant he was going to pat the Defendant down and the Defendant then reached into his back pocket and gave the officer a black plastic container. *Id.* The officer opened the container and observed multiple clear baggies with crystallized substance suspected to be methamphetamine. *Id.* The Defendant does not deny he gave the officer the container voluntarily. *Id.* Based on the existence of probable cause and the lawful weapons frisk authorized by 8 GCA § 30.50, the search of Defendant's person conducted by the officers were not in violation of 8 G.C.A. § 30.10 or 8 GCA § 30.30.

## V. CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Physical Evidence is hereby **DENIED**.

JAN 0 3 2024
SO ORDERED this _____ day of December, 2023.

_____
**HONORABLE ALBERTO E. TOLENTINO**
**Judge, SUPERIOR COURT OF GUAM**